[Civ. No. 4612. Third Appellate District.—December 9, 1932.]

JULIA ADAMS BALDING et al., Petitioners, v. HARVEY D. EICH, as Treasurer, etc., Respondent.

Snook & Snook & Chase for Petitioners.

E. S. Norby for Respondent.

PLUMMER, J.—This cause is again before us upon the application of the above-named petitioners praying that a writ of mandate be issued commanding and directing the respondent, as the trustee of the bond fund of Reclamation District No. 784 to cancel the entry made by him on the records of said district wherein it is purported to state that in receipt of the face value of $5,000 of unmatured bonds the assessment upon the several lots of land set forth in the petition has been fully paid and discharged.

The record shows that on or about the twenty-ninth day of March, 1932, this court in this cause issued a peremptory writ of mandate directed to the respondent as the treasurer of the county of Yuba and as trustee of the bond fund of Reclamation District No. 784, to proceed with the collection of certain overdue calls based upon a reclamation assessment theretofore levied upon the lands lying within said District No. 784, and also to proceed with the sale of all lands and premises lying within said district upon which calls for the payment of said assessment were delinquent. The peremptory writ issued as aforesaid, among other things, contained the following: "At the time stated in said notice, the County Treasurer shall sell each parcel of land described in said notice, to the highest bidder, unless prior thereto he shall have received payment in full of said delinquent instalment and penalty. No bid for any parcel shall be accepted less than the aggregate sum then due on said instal-

ment thereon, and penalty, and such sale shall be made for cash (except the treasurer may receive from any purchaser at their face value in lieu of cash, bonds of said District, or their interest coupons, issued on said assessment, and then matured, or to mature within sixty days after such sale)."

The petitioners herein further allege that the respondent proceeded to make sale of certain land described in the petition, and received therefrom matured bonds in payment of the amount due on the lands described, on account of delinquencies, and also received from the purchaser of the lands described in the petition unmatured bonds of the face value of $5,000, as payment of the remaining portion of the assessment levied upon the lands and premises described in the petition, and marked the assessment thereon as fully paid, and the lands relieved from the lien of the assessment referred to in the petition.

The petitioners herein contend that the latter act of the respondent is void; that the paragraph of section 3480 of the Political Code, as amended by an act of the legislature in 1923, is inapplicable to, and cannot be made the basis for the receipt and cancellation of any outstanding and unmatured bonds of said district which were issued pursuant to the provisions of section 3480 of the Political Code as it read in 1921, governing the issue of bonds herein. The paragraph added by the legislature in 1923 reads: "Any land owner of the District who shall desire at any time to lessen or remove the lien upon his land, of any assessment on which bonds have been, or hereafter may be issued, may deliver to the County Treasurer for cancellation any bonds payable out of said assessment, and the treasurer shall credit against the assessment on his land the principal and accrued interest of said bonds."

In addition to the excerpt which we have taken from the peremptory order herein directing the sale of delinquent installments, which is a literal quotation from one of the paragraphs of section 3480, *supra*, that section also authorizes, limits and prescribes the powers and duties of the treasurer in making delinquent sales, as follows, to wit: "Any parcel of land bid in the purchase by a treasurer, as aforesaid, as trustee of the District, may be sold and conveyed by him, or his successor in office, at any time after the expiration of said redemption period of one year, at public

or private sale, and with or without notice, to any person paying him the amount for which said parcel was paid in by said Treasurer at delinquent sale, with interest thereon at the rate of 7 per cent per annum compounded yearly from the date of said delinquent sale, and also the amount of all subsequent installments then delinquent, with accrued interest and penalties thereon. Such payment may be made either in cash or in matured bonds and coupons issued on said assessment, taken at their face value, and the Treasurer shall execute a deed to such purchaser upon such sale,'' etc.

Whether the land is purchased by a bidder other than the treasurer, at a delinquent sale, or whether it is bid in by the treasurer as trustee of the district, and subsequently sold by him, the language of the two paragraphs which we have quoted is plain that the treasurer has no power to accept as payment anything other than cash or bonds and coupons then matured, or to mature within the limited period set forth in the section.

In answer to the application filed by the petitioners the respondent sets forth the procedure followed by him, setting forth facts indicating that the provisions of section 3480, *supra,* have been strictly complied with, in so far as the selling of the lands described in the petition was made and had on account of nonpayment of assessment calls. The answer of the respondent schedules thirteen tracts of land involved herein, numbered 148, 184, 185, 187, 188, 194, 195, 196, 211, 404, 405, 406 and 407, upon which there was due on the date of sale the total sum of $12,512.19, delinquent on account of nonpayment of calls based upon the assessment for which bonds had been issued by said district. In payment of the amount so delinquent the treasurer sets forth that he received matured bonds and matured interest coupons thereon in the sum of $12,525, being the sum of $12.81 in excess of the delinquencies scheduled as above; that after the receipt of said matured bonds and matured coupons in payment, as just stated, the respondent also received from T. P. Coats, the purchaser of the lots of land referred to herein at the delinquent sale made thereof by the respondent, unmatured bonds in the sum of $4,883.09, with the credit of $12.81, aggregating a total payment of $4,895.90, and credited the same in payment of the balance

of the bond lien against tracts numbered 211, 404, 405, 406 and 407.

This action was based upon the paragraph added to section 3480, *supra,* by the legislature in 1923, and is the action asserted by the petitioners to be unauthorized and void on the ground that it imposes an additional burden upon the lands lying within District No. 784 still subject to the lien of said assessment, in that the receipt of the unmatured bonds in this cause, which do not mature until January 1, 1938, necessitates an additional amount to be added to the assessment calls to meet and make payment of the bonds falling due throughout the intervening period. Unless the amount of the interest, which would otherwise fall due on the bonds maturing in 1938, equals the increased amount to be levied upon the lands still remaining in the district to pay the principal of the bonds and interest coupons maturing in the intervening period, the contention of the petitioners is correct. This mathematical calculation is not before us in the record under consideration, and from the view we take of the issues presented, we deem it unnecessary to make the computation.

It is further contended that the legislature possessed no power to alter or change in any way the law relating to the bonds issued under section 3480, *supra,* so as to increase the immediate burdens upon the lands lying within said district, and that each land owner was given the privilege, and was subject only to the liability of paying, during the ten-year period of the maturity of the bond issue, his relative proportion of the accruing obligation as it then existed, paying one-tenth yearly and no more; that any act of the legislature adding to such burden would be and is unconstitutional.

It is also claimed that the rights of the bondholders would be materially lessened if the paragraph inserted in section 3480, *supra,* by the legislature in 1923, is allowed to affect previous bond issues. That bond issues are contracts which cannot be materially altered or changed so as to substantially affect either the land owners or bondholders.

While these questions are presented to us for consideration and are serious in their nature, they are not really involved in this action, and therefore we need not express any opinion thereon. The record before us shows that the petitioners are bondholders, but it does not show that any

subsequent calls, based upon the assessment referred to herein, will not raise sufficient money to pay maturing bonds and interest. If any of the installments called for are increased, and an added burden placed upon the remaining landholders to meet maturing bonds and maturing coupons, then and in that case the question of the validity of the call may be raised. Again, whether a bondholder may, before a call has been issued, maintain proceedings against the county treasurer as trustee of the bond fund to determine the amount of the call, is not involved herein, though the rights of bondholders in respect thereto appear to be in the minds of the petitioners.

It further appears by the return of the respondent that the unmatured bonds tendered by T. P. Coats, and accepted in payment of the balance due on account of the assessment upon the lots mentioned, do not affect any sums of money to which the petitioners are immediately entitled under and by virtue of any installment calls made by the respondent. Whether the petitioners as bondholders may or may not maintain an action against the respondent and T. P. Coats to have the record of the cancellation of the assessment made by the respondent on account of the tendered payment of unmatured bonds by T. P. Coats, need not be passed upon in this proceeding, further than to state that the record before us does not furnish a basis for the issuance of a writ of mandate as prayed for herein.

We are of the opinion that the inapplicability of the paragraph added to section 3480, *supra,* to previous bond issues, should not be passed upon or determined, or any opinion expressed thereon where it is unnecessary to do so, as appears to be the situation in the cause now before us.

The writ is denied.

Pullen, P. J., and Thompson (R. C.), J., concurred.